## Shrout v. Commonwealth.

(Decided December 4, 1928.)

### Appeal from Campbell Circuit Court.

1.  Criminal Law.—Instruction, in prosecution for murder, that if jury have or entertain reasonable doubt of defendant being guilty, they will acquit him, being substantially in the language of Criminal Code of Practice, sec. 238, held not erroneous.

2. Criminal Law.—Defendant in prosecution for murder, claiming to see juror sleeping and not asking court to arouse juror, cannot complain on appeal on ground that juror did not hear evidence.

3. Criminal Law.—Sustaining objection to question on cross-examination, asking witness to again detail what occurred at murder, which he had testified to on direct examination, held error, but not prejudicial, where there was no avowal of what witness would have stated in answer.

4. Criminal Law.—Defendant, convicted of manslaughter, having made motion to exclude evidence that son of one of witnesses for defense was in penitentiary, cannot complain because it was excluded.

5. Homicide.—Conflicting evidence, in prosecution for murder, as to whether defendant was guilty of commission of the offense, held to make case for jury.

6. Witnesses.—In murder prosecution, permitting commonwealth's attorney on cross-examination to question defendant whether he had not shot another man at some other time and place, after defendant denied on direct examination statement attributed to him that decedent was not the first man he shot, held error.

7. Criminal Law.—Admission of evidence in prosecution for murder as to illicit relationship between defendant and his adopted daughter held prejudicially erroneous.

CHARLES J. MELVILLE and T. W. HARDESTY for appellant.

J. W. CAMMACK, Attorney General, and GEORGE H. MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Reversing.

The appellant, Shrout, shot and killed Ollie Jefferson on June 23, 1927. He was indicted for murder and convicted of manslaughter, and his punishment fixed at seven years in the penitentiary. He sets up and argues ten separate grounds for reversal.

The first ground is that instruction No. 5 was erroneous. It is in this language:

"If the jury have or entertain a reasonable doubt of the defendant being proven to be guilty they will acquit him."

Section 238 of the Criminal Code is as follows:

"If there be a reasonable doubt of the defendant being proven to be guilty, he is entitled to an acquittal."

This court has often held that, if the reasonable doubt instruction is given substantially in the language

of the Code, it is sufficient. Wolff v. Commonwealth, 211 Ky. 62, 276 S. W. 1067.

Another ground is that one of the jurors went to sleep during the progress of the trial and did not hear the evidence. The appellant stated, in an affidavit, that the juror went to sleep; but the juror says, in his affidavit, that he did not go to sleep. This contention is without merit. The appellant could not sit by and see the juror sleeping, without asking the court to arouse him from his slumbers, and then complain about it after the trial was over. Besides, the juror stated that he listened with his eyes closed.

Another ground is that the court restricted the cross-examination of one of the witnesses unreasonably. On direct examination the witness had detailed the occurrences at the time of the killing. On cross-examination counsel for appellant asked the witness to again detail what occurred. The court sustained an objection to the question. The question was proper on cross-examination, and the court should have allowed the witness to answer. It is argued by the Attorney General that there is no avowal as to what the witness would have stated, and that is true, and it is the general rule that there must be an avowal, or this court cannot consider an error in sustaining an objection to a question. The purpose of the question was to have the witness again detail the facts that he saw, for the purpose of bringing out contradictory statements. The appellant was entitled to this, and we do not see how it would be possible for him to make an avowal as to what the witness would have stated in his answer. However, this error was not prejudicial, and the case could not be reversed on that ground.

Another ground is that the court allowed evidence showing that the son of one of the witnesses for appellant was in the penitentiary. Appellant made a motion to exclude this evidence, and it was withdrawn from the consideration of the jury. Counsel for appellant complain about this, but we fail to see how they can complain, because the court sustained their motion. They probably mean to complain that the effect of the evidence could not be removed from the mind of the jury by simply withdrawing the evidence from consideration. There was no error in the ruling of the court on this point.

Another ground relied on is that the evidence does not support the verdict, and that the court should have instructed the jury to return a verdict acquitting appellant. The evidence shows that appellant and the decedent lived on opposite sides of the street in the city of Newport. Appellant was out on the street on his side, tinkering about his automobile. His adopted daughter, Theresa Klotter, was sitting in the automobile, and an automobile salesman was present, discussing the sale of an automobile to appellant. All agree that the decedent was on his side of the street when a conversation started between him and Theresa. The conversation was more expressive than polite, and epithets were passed between them.

Some of the witnesses say that decedent, angry and boisterous, came to the middle of the street and dared appellant to meet him there, so that they might engage in personal combat; that he then proceeded to the automobile of appellant, where he climbed on the running board, still vigorous in his insistence that a fight should take place between him and appellant; that he then went around the automobile, and started up on the sidewalk where appellant was. Some say he threw a rock and struck appellant before this, and others say that he struck at appellant with his fist and was reaching for him when appellant shot him with a pistol, which he had procured from a pocket on the inside of the door of his automobile. On the other hand, some witnesses say that appellant took part in the wordy combat, and dared the decedent to come to the middle of the street, and beckoned him to do so; that he then dared him to come to the automobile, still beckoning him on; that he then dared him to come on the sidewalk; and that, when the decedent accepted his dare and went around the automobile, he shot him, when the decedent was making no demonstration towards him. There are many side lights thrown on the tragedy by all of the witnesses, but the ultimate facts are about as outlined. It was a case for the jury.

The most serious error, and the one which the court thinks makes a reversal of the case necessary, relates to the admission of incompetent evidence. It was testified by some of the witnesses that, at the time appellant shot Jefferson, he remarked, in substance, that it was not the first man he had shot. While he was testifying, his coun-

sel asked him if he made the statement, and he answered in the negative. He was then asked if he had ever killed another man, and he said that he had not. On cross-examination, the commonwealth's attorney was permitted to ask him how many other men he had shot, and he answered that he had shot one. This was objected to, but on redirect examination his counsel asked him about the circumstances surrounding the shooting of the other man, and elicited that it took place 25 or 30 years before the trial. The commonwealth should not have been allowed to ask him about the shooting of another man at some other time and place. It was proper for him to deny that he made the statement that it was not the first man that he had shot, but it was not proper to go into the matter further. It was error to allow the commonwealth's attorney to ask him if he had not shot another man.

We doubt whether this error would require a reversal of the judgment, if it stood alone; but there is another line of questions which were objected to by appellant and which should not have been allowed. They related to the relationship between appellant and his adopted daughter. She was not on trial, and neither was appellant for anything that may, or may not, have taken place between them. The commonwealth was allowed to go into the question of how long she had lived with him, when her baby as born, when and where she married, where her husband was, and finally appellant was asked if he was not the father of the child. It is true he indignantly answered that he was not. These questions were calculated to arouse a suspicion in the mind of the jury as to the moral character of appellant. The court should not have allowed this line of questioning. On the evidence it is a close case, and we cannot say, from a consideration of the whole record, that appellant was not prejudiced by the incompetent evidence which was admitted.

On another trial, the word "if" at the beginning of the fourth instruction should be changed to the word "although."

Judgment reversed, and cause remanded for proceedings consistent with this opinion.